# UNITED STATES DISTRICT COURT
## DISTRICT OF NEVADA

**\*\*\***

STACI L. DALLENBACH,

        Plaintiff,

vs.

STANDARD INSURANCE COMPANY,

        Defendant.

Case No. 2:18-cv-02024-GMN-VCF

### REPORT AND RECOMMENDATION

MOTION TO SET STANDARD OF REVIEW [EFC NO. 19]

    Before the Court is Defendant Standard Insurance Company's ("Standard") Motion to Set Standard of Review.  (ECF No. 19).  For the reasons discussed below, the Court should use the abuse of discretion standard of review in this case.

## BACKGROUND

    In her complaint, Plaintiff Staci Dallenbach seeks judicial review under the Employee Retirement Income Security Act of 1974 ("ERISA") of Standard's decision to terminate her long term disability ("LTD") benefits.  (ECF No. 1 at 1-2).  Dallenbach's insurance policy was issued in 2012 and renewed every 12 months.  (*Id.* at 2; ECF No. 19 at 2).  Dallenbach became disabled on May 2, 2015 and was granted LTD benefits by Standard effective October 29, 2015.  (ECF No. 1 at 5).  "By letter dated August 4, 2017, Standard notified Dallenbach that[] the maximum benefit for her Limited Disability Benefit would occur on October 28, 2017; no further benefits would therefore be payable."  (*Id.*).  Standard denied Dallenbach's appeals, thereby exhausting Dallenbach's administrative remedies, on April 20, 2018.  (*Id.* at 7).

    The Court's standard of review of an insurance decision under ERISA depends on whether "the benefit plan gives the administrator or fiduciary discretionary authority to determine eligibility for benefits

or to construe the terms of the plan." *Firestone Tire & Rubber Co. v. Bruch*, 489 U.S. 101, 115 (1989). The Court applies an abuse of discretion standard of review if the policy grants discretion and a de novo standard of review if the policy does not grant discretion. *Id.* The policy in this case grants discretion to Standard. (ECF No. 1 at 12). However, the policy is governed by Minnesota law (*Id.* at 12-13), and Minnesota has passed a statute making discretion provisions unenforceable:

> No policy, contract, certificate, or agreement offered or issued in this state providing for disability income protection coverage may contain a provision purporting to reserve discretion to the insurer to interpret the terms of the contract or provide a standard of review that is inconsistent with the laws of this state, or less favorable to the enrollee when a claim is denied than a preponderance of the evidence standard.

Minn. Stat. 60A.42. "This section is effective January 1, 2016, and applies to policies issued or renewed on or after that date." 2015 Minn. Sess. Law Serv. Ch. 59 § 1 (S.F. 997).

The Court ordered that "there will be no discovery in this case until the issue of what's the standard of review is resolved." (ECF No. 18). Standard argues that an abuse of discretion standard of review applies in this case. (ECF No. 19 at 2). Standard asserts that Dallenbach's claim vested in 2015, when she became disabled, and the 2016 Minnesota statute does not apply retroactively. (*Id.*). Standard relies on this provision in the policy:

> During each period of continuous Disability, we will pay LTD Benefits according to the terms of the Group Policy in effect on the date you become Disabled. Your right to receive LTD Benefits will not be affected by:
>
> 1. Any amendment to the Group Policy that is effective after you become Disabled.
>
> 2. Termination of the Group Policy after you become Disabled.

(ECF No. 19-1 at 32). Dallenbach argues that the de novo standard of review applies in this case. (ECF No. 20 at 5). Dallenbach asserts that because her policy was renewed in 2016 and 2017 before Standard

denied her benefits, the Minnesota statute applies to the policy and has rendered the discretion provision unenforceable.  (ECF No. 20 at 8-10).

## ANALYSIS

The timeline in this case is not disputed:  Dallenbach's insurance policy, containing a provision that grants Standard discretionary authority, was issued in 2012 and renewed every 12 months.  (ECF No. 1 at 2, 12; ECF No. 19 at 2).  Dallenbach became disabled in 2015.  (ECF No. 1 at 5).  Minnesota enacted a law rending discretion provisions unenforceable for policies issued or renewed starting in 2016.  (*Id.* at 12-13).  Standard notified Dallenbach that her benefits would end in 2017.  (*Id.* at 5).  Dallenbach exhausted her administrative remedies in 2018.  (*Id.* at 7).

The Court's standard of review will depend on whether Standard had discretionary authority to determine Dallenbach's eligibility for benefits.  "[A] denial of benefits…is to be reviewed under a de novo standard unless the benefit plan gives the administrator or fiduciary discretionary authority to determine eligibility for benefits or to construe the terms of the plan."  *Firestone Tire & Rubber Co. v. Bruch*, 489 U.S. 101, 115 (1989).  [I]f a benefit plan gives discretion to an administrator or fiduciary who is operating under a conflict of interest, that conflict must be weighed as a 'facto[r] in determining whether there is an abuse of discretion.'"  *Id.* (quoting Restatement (Second) of Trusts § 187, Comment d (1959)).

To determine whether Standard had discretion, the Court must attempt to harmonize a contractual provision and a statutory provision that appear to lead to opposite conclusions.  Dallenbach's policy states that Standard "will pay LTD Benefits according to the terms of the Group Policy in effect on the date [Dallenbach] bec[a]me Disabled," and her "right to receive LTD Benefits will not be affected by…[a]ny amendment to the Group Policy that is effective after [she became] Disabled."  (ECF No. 19-1 at 32).  The discretion provision was an enforceable term within the policy in 2015, when Dallenbach became disabled.  However, Minnesota law, which governs the policy, states that no policy "issued or renewed"

since January 1, 2016 "may contain a provision purporting to reserve discretion to the insurer." Minn. Stat. 60A.42; 2015 Minn. Sess. Law Serv. Ch. 59 § 1 (S.F. 997). Dallenbach's policy was renewed in 2016 and 2017, prior to Standard denying her benefits.

## I.    Statutory Changes and Policy Amendments

The first issue that the Court must resolve is whether an amendment to an insurance policy forced on the parties by a statute must be treated differently than an amendment to an insurance policy voluntarily adopted by one or more of the parties to the policy. Much of the caselaw cited and arguments made by the parties relates to the difference, if any, between policy amendments and statutory changes. (*See* ECF No. 19 at 3-6; ECF No. 20 at 10-19). Dallenbach argues that because "a change in the law is not, by default, an 'amendment' to the Policy" and is instead "a procedural change in the law," the Court cannot analyze this case as it would if Dallenbach's policy had been amended by the parties. (*Id.* at 11-12).

However, the Court finds no support for Dallenbach's argument that a statutory change must be treated differently than an amendment adopted by a party to the policy. The Minnesota statute is not merely a "procedural law that applies to this Court's review of this case." (*Id.* at 7-10). The statute impacts the parties' interactions with each other by changing how Standard evaluates claims. The statutory change has the same impact as any amendment—it changes the terms of the policy. Courts interpreting statutes' impact on contracts have held that statutory "provisions are read into each policy thereunder, and become a part of the contract with full binding effect upon each party." *Stephan v. Unum Life Ins. Co. of Am.*, 697 F.3d 917, 927 (9th Cir. 2012) (quoting *Interins. Exch. of the Auto. Club of S. Cal. v. Ohio Cas. Ins. Co.*, 58 Cal.2d 142, 148 (1962); *see also Travelers Ins. Co. v. Am. Fid. & Cas. Co.*, 164 F. Supp. 393, 397 (D. Minn. 1958) ("Under Minnesota law the pertinent statutory law of the place where an insurance policy is issued becomes a part of the contract of insurance."). Because Courts treat statutory provisions as becoming part of the contract, the Court finds that the analysis regarding the Minnesota

statute in this case is no different than an analysis regarding an amendment voluntarily adopted by a party to the policy.

## II.    Version of the Policy at Issue

The Court must next determine what version of Dallenbach's policy is at issue in this case. Standard argues that the 2015 version of Dallenbach's policy is at issue, because Dallenbach became disabled in 2015.  (ECF No. 19 at 2).  Dallenbach argues that the 2017 version of her policy is at issue, because her policy was renewed after the Minnesota statute came into effect but before her benefits were denied.  (ECF No. 20 at 8-10).

In reviewing a denial of benefits under ERISA, the controlling policy is the policy in effect either (1) when the employee has vested rights in benefits or (2) if the employee has no vested right under the policy, when an ERISA cause of action accrues at the time that benefits are denied.  *Grosz-Salomon v. Paul Revere Life Ins. Co.*, 237 F.3d 1154, 1159-61 (9th Cir. 2001).[1]  When a policy has clear language that a claim is to be "provided for under the terms of the Plan in effect at the time [a] disabilit[y] commenced," the employee has a vested right in benefits beginning at the time of the alleged disability. *Shane v. Albertson's Inc*., 504 F.3d 1166, 1169 (9th Cir. 2007).  Therefore, the controlling policy will be the policy in effect at the time the disability commenced.  *Id.*

In this case, Dallenbach's policy states that Standard "will pay LTD Benefits according to the terms of the Group Policy in effect on the date [Dallenbach] bec[a]me Disabled," and her "right to receive LTD Benefits will not be affected by…[a]ny amendment to the Group Policy that is effective after [she

---

[1] The Court is not persuaded by the cases Dallenbach cites to argue that her rights were not vested until accrual of her ERISA claim.  (ECF No. 20 at 12-13).  The cases all rely on *Murray v. Anderson Bjornstad Kane Jacobs, Inc*., No. C10-484 RSL, 2011 WL 617384 (W.D. Wash. Feb. 10, 2011).  *Murray* states that "[t]he parties agree that judicial review is based upon the policy in effect as of the date the claim is denied."  *Id.* at *4 (emphasis added).  *Murray* also cites *Van Alstine v. CIGNA*, 73 F. App'x 956, 957 (9th Cir. 2003), which contains the same overstatement of *Grosz-Salomon*'s holding that the Ninth Circuit disapproved of in *Shane v. Albertson's Inc*., 504 F.3d 1166, 1169 (9th Cir. 2007).

became] Disabled." (ECF No. 19-1 at 32). Dallenbach had a vested right in benefits at the time she became disabled in 2015.[2] Therefore, the controlling policy in this case is the policy as it existed in 2015, prior to the enactment of the Minnesota statute. Though the policy was renewed in 2016, and was thereby modified by the Minnesota statute, the terms of the policy make it clear that changes to the policy after Dallenbach became disabled would not apply to Dallenbach's disability claim that arose in 2015.

Dallenbach's policy in 2015 granted Standard discretionary authority. (ECF No. 1 at 12). Therefore, the Court should apply an abuse of discretion standard of review in this case. *See Firestone Tire & Rubber Co. v. Bruch*, 489 U.S. 101, 115 (1989).

ACCORDINGLY, and for good cause shown,

IT IS RECOMMENDED that Standard's Motion to Set Standard of Review (ECF No. 19) be GRANTED and the Court use the abuse of discretion standard of review in this case.

DATED this 8th day of April, 2019.

_____
CAM FERENBACH
UNITED STATES MAGISTRATE JUDGE

---

[2] Dallenbach argues that the only provision that vested was Dallenbach's right to receive payment, and other terms of the policy could still be amended. (ECF No. 20 at 10-20). This goes against the plain terms of the policy. Standard's process in determining whether to pay Dallenbach and the amount of benefits relied on many different "terms of the Group Policy in effect on the date [Dallenbach] bec[a]me Disabled," including the provision regarding Standard's discretion. (ECF No. 19-1 at 32).